**CLOSED**

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————— :
ILONA TAYLOR,                    :
                                 :
            Plaintiff,           :          Civil Action No. 05-0467 (JAP)
                                 :
      -v-                        :
                                 :
JO ANNE B. BARNHART,             :          **OPINION**
Commissioner of Social Security, :
                                 :
            Defendant.           :
———————————————— :

Appearances:

PAMELA S. LEVINE, ESQ.
Binder and Binder, P.C.
215 Park Avenue South, 6th Floor
New York, New York 10003
      Attorney for Petitioner

CHRISTOPHER J. CHRISTIE
United States Attorney
ARTHUR SWERDLOFF
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
      Attorney for Defendant

PISANO, District Judge:

Before the Court is Ilona Taylor's ("Petitioner" or "Taylor") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1368(c)(3) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Petitioner was not disabled. Accordingly, the Court affirms.

## I.  BACKGROUND

Petitioner, born on December 13, 1945, has a high school diploma and approximately one semester of college education. She has worked primarily as a recreation assistant at a daycare and more recently as an administrative assistant for an insurance company, where she was responsible for collecting premiums. She asserts that she has been disabled and unable to work since November 21, 2002 due to the diagnosis and subsequent treatment for breast cancer. In Petitioner's Disability Report (R.61-70), she claimed that she could not work until her chemotherapy and radiation treatments "are finished and checked." (R.62). Petitioner also claims that she is disabled by chronic back pain.

### A.  Procedural History

Petitioner filed her application for DIB on February 2, 2003. Her claims were denied initially on May 22, 2003, and again on reconsideration on August 29, 2003. Petitioner filed a timely request for a hearing before an administrative law judge, which took place on March 23, 2004 before Administrative Law Judge Richard L. DeSteno ("ALJ"). The ALJ issued a decision April 13, 2004, denying Petitioner's application. Petitioner timely filed a Request for Review

2

with the Social Security Administration ("SSA").  In an Action dated December 23, 2004, the

SSA's Appeals Council concluded that there was no basis to grant Petitioner's request for

review.  Upon that denial, the ALJ's ruling became the Commissioner's final decision.  On

January 24, 2005, Petitioner filed this complaint challenging the final decision.

###  B.  Work History

Between 1987 and 1996, Petitioner was employed as a recreational assistant in child care

at the Military Ocean Terminal, where her responsibilities included preparing meals for the

children, helping them with homework and providing general advice.  (R.63).  She also

conducted meetings with the parents.  (*Id.*).  As a recreational assistant, Petitioner worked five

days a week for eight hours each day.[1]  (*Id.*).  She stated that the heaviest weight she lifted at this

job was twenty pounds and that she frequently lifted ten pounds.[2]  (*Id.*)  Lastly, she indicated

during an average workday, she walked for five hours, stood for an hour and a half, and sat for an

hour and a half.  (*Id.*)

Most recently, Petitioner worked as an administrative assistant at Prudential Financial

beginning in 1997 or 1998 and ending on November 23, 2002.[3]  As an assistant, Petitioner

---

[1]There are a number of inconsistencies between the Work History Report completed and signed by Petitioner on April 2, 2002 (R.71-78), and the SSA Disability Report completed on February 11, 2003 (R.61-70).  On the former, Petitioner claimed that she supervised six people, and had the ability to "hire and fire employees."  (R.73).  On the latter, she indicated she worked with four people, and did not have the capacity to hire and fire employees.  (R.63).

[2]On the Work History Report, however, Petitioner indicated that she lifted twenty pounds and frequently lifted twenty-five pounds. (R.73).

[3]Petitioner refers to this position both as an "administrative assistant" and as a "payroll clerk." Furthermore, on the SSA Disability Report, Petitioner claims she began working at Prudential on May 1997 (R.63), while indicating a start date of 1998 on the Work History Report (R.71).

worked five days a week for seven and a half hours each day, and was responsible for contacting customers and entering their insurance and personal information into a computer.  (R.72).  Her job involved mostly sitting, though she also claimed that she frequently stood and walked. (R.137).  Furthermore, the heaviest weight she lifted was twenty pounds and she frequently lifted twenty-five pounds.  (*Id.*).

### C.   Medical History

Petitioner alleges a disability onset date of November 21, 2002, around the time when she first discovered a lump on her right breast.  On November 23, doctors diagnosed the lump as a cancerous tumor.  Dr. Susan McManus performed a right lumpectomy and sentinel lymph node biopsy on December 2, 2002.  (R.157).

Post-surgery, Petitioner consulted Robert P. Fein, M.D., who recommended chemotherapy and radiation treatments to the breast, as well as a Mediport implant because of poor venous access.  (R.204-208).  Dr. Fein noted that at the time of his initial examination, Petitioner felt well and did not suffer from "nausea, vomiting, pain, fever or shortness of breath." (R.252).  However, according to Alexander Haas, M.D., Petitioner did have difficulties with her chemotherapy, experiencing fatigue, weight loss and nausea.  (R.238).  Dr. Fein referred Taylor to Dr. Haas for radiation therapy, which took place from April 28, 2003, through June 12, 2003 at St. Peter's University Hospital in New Brunswick, New Jersey.  (R.225).  Dr. Haas reported at the initial consultation on April 3, 2003 that Petitioner showed no physical distress.  (R.239). Treatment notes indicate that although Petitioner had "hyperpigmentation and some tenderness present at the end of the course of treatment," she had few complaints, and records indicated that claimant reported feeling well.  (R.209-210, 222).  Dr. Haas did not note any other physical

4

impairments and indicated that he could not provide his medical opinion on Petitioner's ability to perform work related activities.  (R.226-227).

Petitioner also has an extensive history of back problems, and she was treated by Lawrence Gross, M.D., dating back to 1993.  Dr. Gross mainly treated Petitioner over the years for hypertension, migraine headaches and spinal arthritis.  The "low back syndrome" began in July 1995.  Dr. Gross reported that Petitioner was diagnosed with lumbar radiculopathy in January 1997 and has tried a variety of medications, including vioxx, to manage the pain. According to a February 1997 CAT scan, Petitioner suffered from a diffuse disc bulge at the L4-5 and L3-4 levels with no evidence of herniation.  (R.99).  Dr. Gross noted that her chronic back pain often resulted in sciatica, and she was dealing with emotional and physical discomfort due to the breast cancer and resulting treatment.  An MRI of the lumbosacral spine taken on October 8, 2003, revealed moderate central spinal stenosis, "in part due to facet degenerative changes and a mild degree of grade I degenerative spondylolisthesis."  (R.242, 251).  Salim Samuel, M.D., who examined the MRI of her lumbar spine, also noted no evidence of metastatic disease, no abnormal enhancements seen in the spinal canal, and despite some mild diffuse disc bulges, no significant narrowing of the central spinal canal or neural foramina. (R.251).

Dr. Gross concluded in a report prepared specifically for presentation to the Division of Disability Determination Services that Petitioner was disabled as of March 18, 2003, with the possibility that she could be permanently disabled.  (R.97-98).  After a January 12, 2004 examination, Dr. Gross reported severe pain and fatigue and opined that Petitioner could sit for less than an hour and stand or walk for less than two hours in a daily work setting.  (R.244).  The doctor stated that she could only occasionally lift and carry up to five pounds, the pain was

severe enough to interfere with her concentration, and work activity would only exacerbate the symptoms.  The doctor characterized the frequency of the pain as chronic and severe, and described her prognosis as "guarded."

The Division of Disability Determination Services requested a consultative evaluation of Petitioner on April 24, 2003.  (R.188-190).  Ronald Bagner, M.D. performed an evaluation during which Petitioner complained of pain in her lower back which radiated down her left leg.  Dr. Bagner noticed that Petitioner ambulated slowly, got on and off the examining table with moderate difficulty, and had moderate difficulty with heel and toe walking.  Nevertheless, Petitioner dressed and undressed without assistance, was not uncomfortable in the seated position during the interview and had normal range of motion of the upper and lower extremities.  She did not exhibit pain on straight leg raising and did not show any sensory abnormalities.  Dr. Bagner diagnosed Taylor with lumbar radiculopathy and did not note any functional limitations.

The record also contains two Physical Residual Functional Capacity Assessments, dated April 9, 2003 (R.100-107), and May 1, 2003 (R.190-197), respectively.  The medical consultant observed exertional limitations, such as the inability to lift more than ten pounds, stand or walk more than two hours per workday, and sit for more than six hours.  The examiner reported no postural or manipulative limitations.  The report concludes that Petitioner suffered from fatigue and other side effects from chemotherapy treatment, but her prognosis was good and her condition was not expected to last more than twelve months.  The second form, dated less than a month later, indicates Petitioner suffered from low back syndrome but the condition did not cause functional limitations.  For instance, the medical consultant observed that she could occasionally lift fifty pounds and frequently lift twenty-five pounds, and could stand or sit for

about six hours in a work day.  The consultant's notes and conclusions, however, are largely illegible, as is the signature.  Consequently, the Court will not accord the second Assessment any weight.[4]

Petitioner appeared at a hearing before the ALJ on March 23, 2004.  (R.258-281).  She explained that she worked on "computer intake" for Prudential Financial Investments from 1997 until she stopped working in November 2002.  Her primary responsibility was to collect unpaid insurance premiums.  She spent most of each workday sitting down in a cubicle, where she made phone calls and had to input information into her computer.  Once a month she had to stock the supply room, but she received help with heavier boxes.  She lifted up to ten pounds.  Before Prudential, she spent approximately nine years with Military Ocean Terminal, supervising the children of military employees in a daycare-type atmosphere.

Petitioner stated that her final radiation treatment took place on August 8, 2003.  She testified to feeling okay after the radiation treatment, even though she complained of fatigue and took medicine for another two months to help regain her strength.  Petitioner believed her back condition was aggravated by laying down a lot during her chemotherapy and radiation treatment. She complained of daily, intermittent sharp pains in her back that radiated down to her feet.  Due to her back pain, she testified she could sit for approximately thirty minutes at a time, stand for twenty, walk for fifteen, and lift and carry a ten pounds.  Her back condition has only worsened after her lumpectomy, though she testified of her ability to drive, clean, do some shopping, and occasionally cook.  She received substantial assistance with numerous daily activities from her daughter.  Petitioner has tried a variety of pain medications without success, and was taking

---

[4]The ALJ did not discuss the Assessment in his opinion, indicating that he, too, did not consider the report in his analysis.

Vioxx at the time of her testimony.  However, Petitioner only enjoyed temporary relief, and she aggravated the pain during normal activities such as bending.  She is most comfortable laying on her side.  She further stated that she was unable to continue her hobby of crocheting and her back pain prevented her from attending church as much as she liked.  Petitioner also suffered from chronic obstructive pulmonary disease, though she was diagnosed back in 1998 and had maintained employment for subsequent years.  She did not think she was able to continue her job as an administrative assistant, which involved sitting all day and working at a computer.

### D.      The ALJ's Decision

The ALJ recounted all of the above medical evidence in his decision.  (R.20-26)  He considered the evidence regarding Petitioner's bout with breast cancer and her chronic back pain. He discussed the report of Petitioner's treating physician, Dr. Gross, as well that of Dr. Bagner. The ALJ took into account the 1997 CT Scan and the October 2003 MRI.  He considered Dr. Haas's notes regarding radiation therapy, and her outpatient treatment records.  The ALJ also discussed all of Petitioner's hearing testimony.

He concluded that although the evidence indicated that the Petitioner had the "residual effects of breast cancer, and degenerative changes and spinal stenosis of the lumbar spine," there was no evidence that these effects were so severe so as to prevent Petitioner from doing basic work activities.  (R.23)  The ALJ first determined that Petitioner's condition was not severe enough to meet or equal any impairment in the listings in Appendix 1, Subpart P.  Specifically, there was "no evidence of any recurrent breast carcinoma or distant metastases as required under medical listing 13.09."  (R.23)  Nor did the ALJ find any evidence of any significant motor, sensory or reflex limitations as defined in listing 1.04A.

8

In determining Petitioner's residual functional capacity, the ALJ found the "subjective complaints of disabling pain and other symptoms and limitation [sic] precluding all significant work activity . . . not fully credible or consistent with Social Security Ruling 96-7p and 20 CFR 404.1529." (R.23 (alteration in original)).  Instead, the ALJ concluded that there were no recurring tumors and the residual symptoms resulting from her chemotherapy and radiation treatment had subsided by September 2003, less than a year after she first discovered the lump. Furthermore, the ALJ took into account that the October 2003 MRI on Petitioner's back revealed only minor degenerative changes.  Petitioner had disc problems dating back to 1997 and was able to work for years.  The records showed that Petitioner had not experimented with potent pain medications other than Vioxx; there was no evidence of any orthopedic treatment; Petitioner had never been hospitalized due to her back; and Dr. Bagner's findings, along with Petitioner's daily activities, were inconsistent with a finding of total debilitation.

Accordingly, the ALJ found Petitioner capable of performing light work.  Because her past relevant work as an insurance company payment clerk "did not entail exertional or non-exertional demands that exceed the parameters of sedentary work, much less light work," the ALJ concluded that Petitioner was capable of continuing her past relevant employment as a payment clerk, "both as she previously performed it, and as it is generally performed within the national economy." (R.25).

Petitioner now raises three arguments in support of her appeal:

1.  The ALJ failed to properly evaluate the opinion of the treating physician;

2.  The ALJ's conclusion that the Petitioner could perform at least light work activity is not supported by the record; and

3.   The ALJ improperly evaluated the Petitioner's credibility.

The Commissioner contends the ALJ's decision is supported by substantial evidence and should

not be disturbed.

## II.    STANDARD OF REVIEW

A reviewing court must uphold the Commissioner's factual decisions if they are

supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970

F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993).

"Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S.

389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Id*.  The inquiry is not whether the reviewing court would have made the same

determination, but rather, whether the Commissioner's conclusion was reasonable.  *Brown v.*

*Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Some types of evidence will not be "substantial."

For example,

> [a] single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is overwhelmed by other evidence –
> particularly certain types of evidence (e.g. that offered by treating physicians) – or
> if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court, however, does have a duty to review the evidence in its totality.  *See*

*Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into

account whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F.

10

Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)).   The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."   *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).   As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).   Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

### A.      The Five-Step Analysis for Determining Disability

A claimant's eligibility for DIB is governed by 42 U.S.C. § 1382.   Under the Social Security Act ("Act"), a claimant is eligible for DIB if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   A person is disabled for these purposes only if her physical or mental

impairments are "of such severity that [s]he is not only unable to do h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits.  *Id*.  If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment.  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits.  *Id*. Should the claimant be unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can

perform other substantial, gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot

satisfy this burden, the claimant shall receive social security benefits.  *Yuckert*, 482 U.S. at 146-

47 n.5.

**_____B.      The Record Must Provide Objective, Medical Evidence**

Under the Act, proof of a disability requires objective, medical evidence.  "An individual

shall not be considered to be under a disability unless [s]he furnishes such medical and other

evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).

Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be

conclusive evidence of disability as defined in this section."  *Id*.  Specifically, a finding that one

is disabled requires

> medical signs and findings, established by medically acceptable clinical or
> laboratory diagnostic techniques, which show the existence of a medical
> impairment that results from anatomical, physiological, or psychological
> abnormalities which could reasonable be expected to produce the pain or other
> symptoms alleged and which, when considered with all evidence required to be
> furnished under this paragraph . . . would lead to a conclusion that the individual
> is under a disability.

*Id*.; *see* 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . .").  Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of

breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work

activities unless medical signs or laboratory findings show that a medically determinable

impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362

(3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective

symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent

with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability").

## III.   DISCUSSION

### A.      The ALJ Properly Addressed the Opinion of the Treating Physician

Petitioner argues that the ALJ failed to properly evaluate Dr. Gross's medical opinions. She contends that because Dr. Gross has treated her since 1993, his opinions reflect sound judgment based upon continued and prolonged observation and should therefore be accorded controlling weight.  Petitioner further argues that the ALJ improperly disregarded Dr. Gross's opinion on her residual functional capacity because his finding - that she could perform only "less than sedentary work" - is supported by other medical evidence of record.

While the ALJ is required to take into consideration the opinions of the treating physician, the opinions are not necessarily controlling if not well supported by the medical evidence of record.  The ALJ is further obligated to explain the reasons for disregarding or discrediting the treating source.  The Court finds that the ALJ's decision to discredit Dr. Gross's ultimate conclusion on disability is supported by substantial evidence.  Furthermore, the ALJ adequately explained his reasons for such a decision.

The record reflects that Dr. Gross treated Petitioner dating back to 1993.  He reported that Petitioner had dealt with lumbar radiculopathy since January 1997.  This is supported by a February 1997 CAT scan, which revealed a diffuse disc bulge at the L4-5 and L3-4 levels with no evidence of herniation.  Dr. Gross further reported that Petitioner's chronic back pain often

resulted in sciatica.  The doctor concluded in a report prepared specifically for presentation to

Division of Disability Determination Services that Petitioner was disabled as of March 18, 2003,

with the possibility that she could be permanently disabled.  After a January 12, 2004

examination, Dr. Gross reported severe pain and fatigue and opined that Petitioner could sit for

less than an hour and stand or walk for less than two hours in a daily work setting.  He decided

that she could only occasionally lift and carry up to five pounds, the pain was severe enough to

interfere with her concentration, and work activity would only exacerbate the symptoms.  The

pain was chronic and severe, and Dr. Gross described her prognosis as "guarded."  He relied on

an MRI of the lumbosacral spine taken on October 8, 2003 that revealed moderate central spinal

stenosis, "in part due to facet degenerative changes and a mild degree of grade I degenerative

spondylolisthesis."  (R.242, 251).  The MRI report also noted no evidence of metastatic disease,

no abnormal enhancements seen in the spinal canal, and despite some mild diffuse disc bulges,

no significant narrowing of the central spinal canal or neural foramina.  Based on the MRI and

his own observations, Dr. Gross concluded that Petitioner could perform only less than sedentary

work.

The ALJ expressly discussed these findings in his opinion.  He addressed Dr. Gross's

March 18, 2003 report in which he concluded that Taylor was disabled from her current

occupation due to chronic back pain.  He included the results of the 1997 and 2003 MRIs.  The

ALJ referred to Dr. Gross's questionnaire, noting the doctor's observations that the Petitioner

could not lift more than five pounds, sit for more than an hour, or stand/walk for more than two

hours.  Ultimately, the ALJ did not find Dr. Gross's conclusion on disability to be supported by

the medical evidence.  The ALJ explained that Taylor had suffered from back problems dating

15

back to 1997 and yet was capable of gainful employment for years afterwards.  The ALJ also noted that the 2003 MRI revealed the same disc bulges that existed in 1997, with only mild degenerative changes.  Such a reading is supported by the MRI report, which revealed moderate central spinal stenosis, "in part due to facet degenerative changes and a mild degree of grade I degenerative spondylolisthesis." (R.242, 251).  The report also noted no evidence of metastatic disease, no abnormal enhancements seen in the spinal canal, and despite some mild diffuse disc bulges, no significant narrowing of the central spinal canal or neural foramina.

Dr. Bagner's observations also weighed against Dr. Gross's conclusions.  That report indicated negative straight-leg raising capability, an absence of motor or sensory deficits, and full range of motion of the upper and lower extremities.  Petitioner argues that the ALJ erred in not mentioning that Dr. Bagner also observed discomfort when rotating the back, and that Petitioner ambulated slowly.  However, the Court does not view such observations as supporting Dr. Gross's restrictive assessment.  Exhibiting some back pain is not sufficient to support prove a total disability.  Through Petitioner's own testimony it became clear that while she experienced discomfort with her back, she still undertook daily life activities.  Furthermore, the ALJ was troubled by the complete absence of any orthopedic treatment and rather conservative attempts at managing the pain through pain relief medications.  All of those considerations led the ALJ to discredit Dr. Gross's conclusion about Petitioner's disability.  The ALJ properly addressed Dr. Gross's opinion and simply found that the countervailing evidence did not warrant a finding of disability.

Petitioner also appears to allege that, contrary to the ALJ's opinion, her breast cancer did leave her disabled for the twelve-month durational requirement.  The ALJ concluded that

16

Petitioner's diagnosis and treatment for breast cancer did not meet the twelve-month period required by the Act.  She complains that the ALJ should not have speculated about the length of her sickness; she was still recuperating months after the conclusion of her radiation treatments, and the ALJ failed to consider both the side effects of treatment and the fact that Dr. Haas continued to prescribe experimental medications.  However, the ALJ relied on the available evidence: after her treatment, there was no documentation of any recurrences, and treatment notes from Dr. Haas and St. Peter's hospital state that she had few remaining symptoms in June 2003 and she reported feeling well and suffered from no symptoms as of September 2003. (R.209).  The evidence simply belies Petitioner's argument.

### B.      The ALJ's RFC Determination is Supported By Substantial Evidence

The ALJ is to make three essential determinations at step four of the sequential evaluation: (1) specific findings as to the claimant's residual functional capacity; (2) findings regarding the physical and mental demands of Petitioner's prior work; and (3) the ALJ must compare the two to determine whether the claimant has the capabilities needed to perform the past relevant work.  *Burnett v. Comm'r of SSA*, 220 F.3d 112, 120 (3d Cir. 2000).  Here, the ALJ found that Petitioner had the residual functional capacity to perform light work, which included standing or walking for two hours and sitting for a total of six hours during a routine workday, lifting up to twenty pounds on occasion, and ten pounds frequently.  The ALJ further concluded that the demands of her prior job as an insurance company payment clerk was consistent with sedentary work, much less light work.  Accordingly, Petitioner had the capabilities to perform her prior job.

Residual functional capacity is a term of art defined as "that which an individual is still

17

able to do despite the limitations caused by his or her impairment[s]." *Hartranft*, 181 F.3d at 359 n.1. *Burnett* requires that an ALJ consider all the evidence of record, discuss what evidence was accepted, rejected, and the reasons for so doing. *Burnett*, 220 F.3d at 121. Petitioner argues that the ALJ has no medical support for his finding that Petitioner was capable of light work.

In determining Petitioner's residual functional capacity, the ALJ took into account the following: (1) Petitioner left work due to diagnosis and treatment for breast cancer in November 2002, and had completed her radiation treatment and reported no ill effects by September 2002; (2) an MRI of the lumbar spine in October 2003 showed mild degenerative changes of the lumbar spine, with no evidence of metastatic disease, no abnormal enhancements seen in the spinal canal, and despite some mild diffuse disc bulges, no significant narrowing of the central spinal canal or neural foramina; (3) Dr. Bagner observed in April 2003, when Taylor's back was particularly agitated because of the ongoing cancer treatments, that she ambulated slowly but without assistance, was not uncomfortable when seated, there was no motor or sensory deficits, no pain upon straight leg raising, no limitations on range of motion, and Petitioner suffered from lumbar radiculopathy; (4) Petitioner's testimony, which revealed that despite living in pain and dealing with some limitations, she does drive herself and go food shopping, cooks occasionally, and makes her own bed; (5) the lack of any treatment, hospitalization or rehabilitation records related to her back condition; and (6) the little weight he accorded to Petitioner's subjective complaints and Dr. Gross's findings.

The Court reminds Petitioner that social security claimants bear the burden at step four. *Burnett*, 220 F.3d at 118 ("The claimant bears the burden of demonstrating an inability to return to her past relevant work."). The ALJ is correct in that the record is devoid of examination notes,

clinical diagnoses, and physical therapy reports to substantiate Dr. Gross's finding that Taylor

was disabled due to her chronic back pain.  The MRI indicated only mild findings, and there is no

evidence that surgery or rehabilitation were considered.  Beyond Dr. Gross's report, the absence

of any other evidence, treatment, or corroborating opinions as it related to Petitioner's back

condition and her inability to work left the ALJ with little reason to conclude that the claimant

could not at the very least perform light work.  It seems evident that Petitioner failed to meet her

burden.

Petitioner also points to two specific aspects of the ALJ's opinion that she believes are

faulty at step four.  First, she contends the ALJ disregarded a state agency report that restricted

Taylor to less than sedentary capacity.  Petitioner misreads the report.  The report did indicate

that Petitioner could not lift more than ten pounds, and it also stated that she could only

stand/walk for less than two hours and sit for less than six hours in an eight-hour workday.  But

this report is dated in April 2003 and is related to her physical condition during her treatment for

breast cancer.  The state physician noted that Petitioner showed considerable side effects from

chemotherapy, but her prognosis was good and her condition was not expected to last more than

a year.  In fact, the record establishes that Petitioner reported feeling well by that September.

Moreover, the report was not related to restrictions arising from her chronic back pain - the

examiner noted no postural limitations with kneeling, crouching or balancing, and no

manipulative problems with reaching.  Thus, this report did not bear on her back condition and in

its totality, it does not support Petitioner's position on appeal.

Second, Petitioner alleges that the ALJ's analysis is faulty because he improperly

evaluated her credibility.  She complains that the ALJ relied on examples of transitory and

19

sporadic activity to support a finding of light work capability, and yet ignored her subjective complaints of ongoing pain and restrictions on daily living.  The ALJ did, however, consider Petitioner's subjective complaints of pain when making the RFC determination, but found her complaints not entirely credible in light of the evidence of record.  He discussed her hearing testimony at length, then reviewed the medical evidence that he thought cast into doubt the severity of her condition.  The ALJ also explained that the pain and fatigue related to the cancer treatments was not disabling for the requisite twelve-month time period because she reported feeling better by September 2003.  While acknowledging that her treatments aggravated her back condition, and this pain arguably continued beyond the twelve-month time period, the ALJ nonetheless concluded that the paucity of physical therapy or other orthopedic intervention was inconsistent with contentions of incapacitation.  It was at this point the ALJ relied on Dr. Bagner's findings and some of Petitioner's testimony about her ability to perform daily activities. The ALJ did not solely rely on sporadic activity, it was merely another factor in his analysis.

The Commissioner has the discretion to evaluate the Petitioner's credibility in light of the evidence of record.  Although Taylor undoubtedly experiences some pain and resulting limitations from her impairments, the evidence of record supports a finding that her allegations of being unable to work were not credible.  The ALJ did appropriately consider and weigh all the evidence when making a credibility determination, and the ALJ's decision is upheld on this ground.

**IV.     CONCLUSION**

For the foregoing reasons, the Court concludes that substantial evidence supports the

ALJ's factual findings and thus affirms the Commissioner's final decision denying benefits for

Petitioner.  An appropriate order follows.


                                              s/ Joel A. Pisano
Dated: September 7, 2005                       JOEL A. PISANO U.S.D.J.


Orig:   Clerk
cc:     All parties
        File